```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,     )   CR. NO. 13-00514-SOM-2
                              )
          Plaintiff,          )   ORDER GRANTING DEFENDANT
                              )   SUGALU GALU'S MOTION FOR
                              )   COMPASSIONATE RELEASE
                              )
     vs.                      )
                              )
SUGALU GALU,                  )
                              )
          Defendant.          )
                              )
_____ )
```

**ORDER GRANTING DEFENDANT SUGALU GALU'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2014, Defendant Sugalu Galu pled guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. This court sentenced him to the mandatory minimum of 20 years in prison. In 2018, Congress amended 21 U.S.C. § 841 as part of the First Step Act, but did not make that amendment retroactive. Under today's law, Galu's mandatory minimum sentence would be 15 years.

Galu now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He is 48. The primary basis for his motion is the COVID-19 pandemic. He contends that his underlying medical conditions (morbid obesity, hypertension, sleep apnea, asthma, and kidney disease) make him vulnerable to complications if he contracts COVID-19. Galu is housed at FCI Terminal Island,

which had a serious outbreak of COVID-19 in April. During that outbreak, Galu tested positive for COVID-19, and he experienced many of the worst symptoms associated with the virus, including pneumonia, a fever, and difficulty breathing. *See* ECF No. 336, PageID # 2538, 2543, 2556. After considering the circumstances presented in this case, particularly the severity of Galu's symptoms and the dangers he may face if exposed to the virus again, this court concludes that Galu has established extraordinary and compelling reasons that warrant a reduction in his sentence. The court grants his motion.

**II.     ANALYSIS.**

Galu's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements.  *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

> **A. Galu has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Galu submitted an administrative compassionate release request to the warden of his prison on June 10, 2020, more than 30 days ago, although after he had filed his initial compassionate release request with this court. *See* ECF No. 338, PageID # 2891.  The Government is not contesting Galu's satisfaction of the exhaustion requirement.  *Id.* at 2891-92. Accordingly, this court finds that Galu has fulfilled the first requirement of § 3582(c)(1)(A).

> **B. Galu has demonstrated that extraordinary and compelling circumstances justify his early release.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release

3

motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute.  *See United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

        The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

    *Cancer

    *Chronic kidney disease

    *COPD (chronic obstructive pulmonary disease)

    *Immunocompromised state (weakened immune system) from solid organ transplant

    *Obesity (body mass index [BMI] of 30 or higher)

    *Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

    *Sickle cell disease

    *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/

people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 28, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Pregnancy

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Smoking

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Galu's morbid obesity, kidney disease, and hypertension place him at risk of a severe illness if he contracts COVID-19. Possibly, his asthma also places him at risk, but that is difficult to determine because the CDC says

5

that moderate to severe asthma presents a risk, and the record is unclear as to whether Galu's asthma falls in that range. The CDC recognizes that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Because Galu appears to have several different underlying conditions that place him at risk, the virus poses a substantial threat to him.

Galu is housed at FCI Terminal Island. Early in the COVID-19 pandemic, the virus spread rapidly through the prison. Because the parties offered conflicting accounts of the prison's present conditions, this court deferred ruling on this motion until it could review an expert report by Dr. Michael Rowe summarizing the current state of the outbreak at Terminal Island in *Wilson v. Ponce*, No. CV. 20-4451 (C.D. Cal.). Dr. Rowe filed that report on August 24, 2020.

Two of Dr. Rowe's conclusions are particularly important. On the one hand, Dr. Rowe determined that "there is almost no active virus in the institution[.]" ECF No. 345-2, PageID # 3042. Dr. Rowe noted that only two inmates still had COVID-19, and they are in quarantine. *Id.* Of those two inmates, one "is probably not even infectious, and the other will likely have met release criteria by the date of submission of this report." *Id.* But "the possibility for a devastating return of the outbreak remains." *Id.* Even though FCI Terminal Island has

6

"instituted many appropriate practices, and, overall, is complying with the most current CDC recommendations for correctional facilities," all prisons face unique challenges in responding to the coronavirus. *Id.* "Correctional institutions are, intrinsically, not designed to provide adequate social distancing." *Id.* at 3035. The risks of a second outbreak are further heightened because prison officials are not in total compliance with measures designed to prevent COVID-19 from re-entering the prison or once again spreading. *Id.* at 3074-96.

In sum, while Galu might not be in immediate danger of being reinfected, the possibility that he will be exposed to the virus again in the future cannot be ignored. One factor this court must consider is Galu's previous exposure to COVID-19. Galu was diagnosed with COVID-19 in late April. There is no dispute that his symptoms were serious. ECF 336, PageID # 2535. He was hospitalized with pneumonia, a fever, and difficulty breathing. *Id.* at 2538, 2543, 2556. Even today, he says he often feels like a "fish out of water" because he has trouble breathing. ECF No. 339-7, PageID # 2957; ECF No. 339-8, PageID # 2959. He reports that his symptoms have recently "progressively worsened." ECF No. 339-8, PageID # 2959.

Galu possibly has some immunity against future infection. Individuals infected by certain other viruses have at least some immunity, although the strength and length of that

7

immunity may vary. This court is acutely aware that no one completely understands how the coronavirus operates. Evidence suggests that COVID-19 antibodies decline over time. Some experts, however, have indicated that individuals infected with COVID-19 are likely to remain immune even after their antibody count drops. As one article put it, "[a] decline in antibodies is normal after a few weeks, and people are protected from the coronavirus in other ways." Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020, https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html; *see also* Martin Finucane, *Here's What You Need To Know About Fading Coronavirus Antibodies*, Boston Globe, July 23, 2020, https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need-know-about-fading-coronavirus-antibodies/; Derek Thompson, *How Long Does COVID-19 Immunity Last?,* The Atlantic, July 20, 2020, https://www.theatlantic.com/ideas/archive/2020/07/could-covid-19-immunity-really-disappear-months/614377/. Even after COVID-19 antibodies decline, the body might retain immunological memory that allows it to quickly produce new antibodies to respond to a second infection. *See* Finucane. Some experts therefore posited that, at the very least, it is highly unlikely that individuals will contract the coronavirus twice. *See id*.

More recently, researchers reported that "[a] Hong Kong

man who was initially infected with the coronavirus in March and made a full recovery was reinfected more than four months later after a trip abroad." Adam Taylor and Ariana Eunjung Cha, *First Coronavirus Reinfection Documented in Hong Kong, Researchers Say*, Washington Post, August 24, 2020, https://www.washingtonpost.com/health/2020/08/24/coronavirus-reinfection-hong-kong/. Shortly after that, "researchers in the United States [reported] their first documented case of a patient who got COVID, recovered and then got it again[.]" Nate Wood, *Nevada lab confirms 1st coronavirus reinfection in the US*, ABC News, Aug. 28, 2020, https://abcnews.go.com/Health/nevada-lab-confirms-1st-coronavirus-reinfection-us/story?id=72691353. Nevertheless, "[s]cientists [still] say that although reinfection is likely possible, it's also extremely rare." *Id.* Notably, these are the "the first documented reinfection[s] among nearly 6 million COVID-19 cases to date." *Id*.

This court is in no position to make a definitive determination about immunity. But, in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence, this court can no more ignore the possibility of immunity than it can ignore the possibility of reinfection.

The court also must consider the time remaining on Galu's sentence. He has been in custody since May 2013, so he

9

has been incarcerated for more than 7 years.  Galu argues that this court should consider the impact of the First Step Act on that sentence.  This court has previously held that a change in the law may be a relevant consideration in determining whether extraordinary and compelling circumstances justify a defendants' release, although this court has declined to rely on a statutory change as the sole consideration when Congress has not made the change retroactive.  *United States v. Cisneros*, 2020 WL 3065103, at *3-4 (D. Haw. June 9, 2020).  Under § 3582(c)(1)(A), a court must consider whether a reduced sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct.  18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a).  A change in the law under which a defendant would receive a reduced sentence if sentenced today could affect all of those considerations.

    Although Galu was sentenced to the then-mandatory minimum of 20 years in prison, today the mandatory minimum would be 15 years.  Taking anticipated good time credit into account, Galu has therefore served a little more than half of the mandatory minimum sentence he would face under today's law.

    Finally, the court considers Galu's history.  Before he was arrested in this case, Galu served as "muscle" at a site known to be a place where prostitution, gambling, and drug

dealing were occurring.  Galu was sentenced in an earlier federal criminal case after pleading guilty to having sold methamphetamine and of having used a firearm as protection while trying to collect a debt.  ECF No. 144, PageID # 528.  Galu served his prison sentence in that earlier case and began his supervised release term in October 2011.  By May 2013, he had been indicted in the present case.  This history gives this court concern about how quickly he returned to criminal behavior.

On the other hand, Galu's record while in prison is encouraging.  Although in 2013 (before he was sentenced) Galu was disciplined in prison for having destroyed property worth $100 or less, *see* ECF No. 338-5, PageID # 2922, he has not been sanctioned again.  Moreover, Galu has completed a number of educational courses, although he has not yet earned his GED.  ECF No. 333-7.

In considering Galu's potential rehabilitation, this court also finds Galu's 10-year supervised release term to be significant.  Even after he is released, this court will be able to keep an eye on Galu to ensure that he continues to work towards his rehabilitation.  If Galu does violate the terms of his release, this court can quickly intervene.  The length of Galu's supervised release, when combined with his conduct while in prison, provides reassurance to this court that he is unlikely to pose a danger to the safety of any other person or the

community if he is released.  Consequently, Galu's release appears consistent with the guidelines promulgated by the Sentencing Commission.  *See* U.S.S.G. § 1B1.13 (stating that an inmate should not be released unless he or she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)").

The balancing process in this case is complex.  Galu, a repeat offender, still has a significant amount of time left on his sentence.  At 48 (nearly 49), he is not of such an advanced age that he is in the most highly vulnerable population.  Moreover, although his compassionate release request is predicated on his susceptibility to developing complications from COVID-19, he may now have some immunity.

At the same time, Galu has several different medical conditions that make him vulnerable to COVID-19, as Galu's serious symptoms during his infection in April demonstrate.  This court is very focused on the severity of those symptoms.  When it comes to Galu's medical condition, that is one of the only things that is certain.  Current knowledge about the coronavirus provides no certainty about how likely it is that Galu has some form of immunity, and, if he does, how long it will last.  Similarly, this court can only speculate about whether a second infection is likely to be worse than the first.  In light of that uncertainty and Galu's serious symptoms in April, this court

selects a cautious path about Galu's medical prospects. Adding to that caution are the conditions at FCI Terminal Island. In an abundance of caution regarding Galu's medical risks at FCI Terminal Island and with reliance on Galu's encouraging conduct while incarcerated as well as on the length of Galu's supervised release term, this court concludes that Galu has demonstrated extraordinary and compelling reasons that warrant his compassionate release and that release is consistent with the Sentencing Commission's policy statements.

**III.    CONCLUSION.**

Galu's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is granted.

Galu's sentence is reduced to time served plus 3 days. The 3-day period is intended to allow the Bureau of Prisons to make travel arrangements for Galu to travel to Hawaii and for his family to remove guns and alcohol from the residence. (Although in orders in other cases, this court has reduced sentences to time served plus 15 days, the court deems a 3-day period sufficient here, given Galu's prior infection.) Following the 3 days, Galu shall be released to begin his term of supervised release.

Galu faces a 10-year term of supervised release, and that term is substantial enough that the court orders no supplemental period of supervised release.

Galu shall abide by all of the standard, mandatory, and special conditions of supervised release previously imposed, including the ban on firearms and alcohol. Also, Galu must abide by the following additional special conditions:

> 7. You must participate in an educational services program and follow the rules and regulations of that program. Such programs may include high school equivalency preparation and other classes designed to improve your proficiency in skills such as reading, writing, mathematics, or computer use.
>
> 8. You must participate in a vocational services program and follow the rules and regulations of that program. Such program may include job readiness training and skills development training.
>
> 9. You must participate in a cognitive behavioral treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, and intensity). Such programs may include group sessions led by a counselor or participation in a program administered by the probation office.
>
> 10. You will be monitored by radio frequency technology for a period of 270 days, and you must follow the rules and regulations of the location monitoring program, pursuant to the Participant's Agreement. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the probation officer. You shall earn leave as determined by the probation officer. Upon securing gainful employment, you must pay the

costs of the program, as directed by the probation officer.

Galu is ordered to abide by all quarantine requirements in effect in the State of Hawaii and in the City and County of Honolulu for persons traveling from out of state. In addition, Galu is ordered to report by telephone (808-541-1283) to the United States Probation Office, District of Hawaii, within 72 hours of his release from BOP custody.

It is so ordered.

DATED: Honolulu, Hawaii, September 14, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Galu*, Cr. No. 13-00514-SOM-2; ORDER GRANTING DEFENDANT SUGALU GALU'S MOTION FOR COMPASSIONATE RELEASE